IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-06-00235-CV

 

In re
Carl Long

 

and

 

No.
10-06-00239-CV

 

In re
carl long

 

 



Original Proceeding

 



DISSENTING Opinion TO ORDER

REGARDING STATE PAYMENT OF FEES










 

The attached appendix is the order of this Court
to which I dissent.  Because it is done in the form of a letter order, I have attached
it as an appendix to assist the reader in understanding this opinion.

          I have a bit of a problem with the
order.

          The order represents strict
enforcement of the procedural rules.  That is not the problem.  I do not mind
strict enforcement of the rules.  What I do mind is the majority’s
schizophrenic application of the rules based upon factors which I cannot identify,
determine, assess, or evaluate.

          I noted in footnote 4 of the dissenting
opinion to the request for a response that Long had not paid the filing fee nor
established his indigency and had failed to provide proof of service that he
had served anyone with the petition.  In re Long, 200 S.W.3d 866, 2006 Tex. App. LEXIS 8429, *4 (Tex. App.—Waco 2006, order) (Gray, C.J., dissenting).  The
majority failed to address any of these problems in filing the petition and
requesting a response.

          So in the same proceeding, while the
majority demands that the respondent’s faxed motion for extension of time be
paid for, they totally disregard the petitioner’s failure to timely obtain
indigent status.[1]

An interesting event has also occurred since September
27, 2006 when the request for a response and my dissenting opinion were issued. 
Apparently in response to the dissenting opinion, Long presented for filing
various documents and motions.  He provided a notarized copy of his inmate
account (for both petitions?), what purports to be an affidavit of indigence
(for both petitions?), a copy of the “Civil Action Complaint and Suit” that he
alleges he sought to file against Tony Wright (No. 10-06-00235-CV), a “Motion
to Submit Exhibits to Support Application for Mandamus and Order Issued by This
Court” (No. 10-06-00235-CV), a “Motion to Show Realtor Complies With Order
Issued and Exhibit as Proof” (No. 10-06-00239-CV), and the “Order Directing
Clerk not to Accept Filing” (related to the suit he sought to file against
Jorja and Elaine Stout) (No. 10-06-00239-CV).  None of these documents indicate
that they were served upon the real party in interest or the respondent.  The
documents were not timely filed, nor acted upon by the Court, except in one
interesting particular.  These documents, which were actually received on
October 6, 2006, were withheld from circulation “until we get [a] response from
[the] Respondent.”  See In re Long, Nos. 10-06-00235-CV and
10-06-00239-CV, 2006 Tex. App. LEXIS 10987, *5 (Tex. App.—Waco Dec. 20, 2006,
order) (Gray, C.J., dissenting).  But nevertheless, the Court’s case management
system reflects that on October 6, 2006 pauper status was granted to Long.  I
never had the opportunity to vote upon that determination.  Id.

          Before we can grant pauper status to
the petitioner, we should comply with the Rules of Appellate Procedure or
explain why we are not going to comply with the rules.  I can find no evidence
of compliance with these procedures, or explanation, in the files related to
this matter.

          I also note that the respondent is the
only party, if you can call a person who has not been served a party, from whom
a response was sought.  The real party in interest is apparently totally
unaware that this proceeding is going forward.  That seems to be a bit of a due
process violation.  Further, I note that my complaint about the cost to the
respondent to prepare the response is apparently coming to fruition because he
has indicated that the volume of documents is quite large and, therefore, has
requested additional time to prepare the response.

Conclusion

          It is not too late to do the right
thing.  For the reasons explained in my dissenting opinion from the request for
a response, I believed then, and continue to believe now, that the proper
disposition is to dismiss the petition for writ of mandamus for want of
jurisdiction.  In re Long, 200 S.W.3d 866, 2006 Tex. App. LEXIS 8429 (Tex. App.—Waco 2006, order) (Gray, C.J., dissenting).  There is still no record properly
before us upon which we can properly grant the relief requested by the
petitioner.  Even if we do not dismiss at this stage of the proceeding, it is
totally improper for the majority to require strict compliance with the rules
by one party, and no compliance with the rules by the other party.[2] 
I cannot join in the perversion of the process and inequality in the
application of the Rules of Appellate Procedure.

          The absurdity of the “order” is
further demonstrated by the fact that a State district judge is being dunned
for advance payment of court costs when the State is exempt pursuant to Texas
Civil Practice and Remedies Code 6.001.  Therefore, based on the “order,” no
response is required.

Based on the foregoing, I dissent to the Court’s
letter order because I would dismiss the petition and assess all costs against
Long.

 

                                                          TOM
GRAY

                                                           Chief
Justice

 

Dissenting
opinion delivered and filed January 10, 2007

Publish




APPENDIX

 

 

Hon.
John H. Jackson

Judge,
13th District Court

P.
 O. Box 333

Corsicana, TX  75151-0333

 

RE:              Court of Appeals Number:   10-06-00235-CV,
10-06-00239-CV

 

 

STYLE:       In re Carl Long

 

 

            Respondent’s motion
requesting an extension of time to respond to the petitions for writ of
mandamus in the above-referenced original proceedings was filed on October 12,
2006.  

 

            The required filing
fee of $10 for the motion filed in each of the above Court of Appeals Number is
PAST DUE.  See Tex. R.
App. P. 5; Appendix to Tex. R. App. P., Order Regarding Fees (July 21,
1998).             

 

The required fax
filing fee of $10 in each of the above Court of Appeals Number is PAST DUE. 
See 10th Tex. App. (Waco) Loc. R. 8.

 

            Unless you are exempt
or file a proper affidavit in accordance with Texas Rule of Appellate Procedure
20, you are required to pay these fees.

 

            Fees totaling $40 may
be paid by check or money order, payable to the “Tenth Court of Appeals.”

 

            Chief Justice Gray
dissenting.

Sincerely,

Sharri Roessler, Clerk

 

___________________________

By:  Nell Hegefeld, Deputy Clerk

 

CC:    Carl
Long









[1]
It is ironic that Long has requested
information on whether the respondent has filed the response requested when he
consistently failed to serve the other parties with documents he has filed.





[2]
While a party representing themselves may
be entitled to a liberal reading of their pleadings, they are not entitled to a
procedural advantage.  Wheeler v. Green, 157 S.W.3d 439, 444 (Tex. 2005); Mansfield State Bank v. Cohn, 573 S.W.2d 181, 184-85 (Tex. 1978); Foster
v. Williams, 74 S.W.3d 200, 202 (Tex. App.—Texarkana 2002, pet. denied); Baughman
v. Baughman, 65 S.W.3d 309, 312 (Tex. App.—Waco 2001, pet. denied).  The
law, including the Rules of Appellate Procedure, applies equally to all
litigants.









style='font-family:"Palatino","serif"'> 

. . .

 

[Irene:]            Hello.

 

[Dispatch:]     Okay.  Is he -- is he
still inside the house?

 

[Irene:]            Yes.

 

[Dispatch:]     Okay.  They’re on their
way.

 

[Irene:]            I’m cut.

 

[Dispatch:]     He cut you?

 

. . .

 

[Birdwell:]     Hey.

 

[9-1-1:]            911.

 

[Birdwell:]     We
need an ambulance at 2323 Reuter right f***ing now.

 

[9-1-1:]            You need an
ambulance?

 

[Birdwell:]     Right
f***ing now.  Move it.

 

[9-1-1:]            What’s the problem,
sir?

 

[Birdwell:]     Do
it.

 

[9-1-1:]            What’s the problem?

 

[Birdwell:]     --
dying.

 

[9-1-1:]            Who’s dying?

 

[Birdwell:]     Just
do it.  A stab victim.

 

[9-1-1:]            A stab victim?

 

[Birdwell:]     Yeah. 
Internal bleeding.  Hurry.

 

[9-1-1:]            Okay.  Who -- Who
stabbed who?

 

[Birdwell:]     I
did it.  And I’m standing right here.  Move.

 

[9-1-1:]            Who did you stab?

 

[Birdwell:]     Move.

 

[9-1-1:]            Who did you stab?

 

--

 

[Policeman]:  Who did you stab, sir?

 

[9-1-1:]            Irene Mitchell.

 

            When police entered Irene’s
house, they found her dying of multiple stab wounds and found Birdwell, bloody
knife in hand and covered in blood, talking on the phone with 9-1-1.  Birdwell
had a cut on his thumb that was bleeding.  

            At his trial, Birdwell
testified, claiming that, when he went into Irene’s darkened bedroom, he was
hit in the head from behind and cut on his hand.  In fear for his life, he
pulled out his knife and began stabbing who he thought was attacking him.  When
the person in front of him let go of his shirt, he stopped stabbing, turned on
the light, and realized that he had been stabbing Irene.  While he was stabbing
in the dark, the other person ran out of the house.

Birdwell admitted at trial that he
stabbed Irene and that he had told the 9-1-1 operator he had stabbed Irene. 
His trial counsel asserted in opening statement (“Birdwell realized that he was
the one who stabbed Irene Mitchell, and he was the one who at least caused some
of the stab wounds to Irene Mitchell”) and in closing argument in
guilt-innocence (“I think the facts that you have seen is that without a
question Vaughn Birdwell stabbed Irene. . . .  He knows that he stabbed
Irene.”) and in punishment (“. . . Vaughn Birdwell realizes that he killed
Irene.”) that Birdwell had stabbed Irene.

The purpose of DNA testing under article 64.03 is to provide an
avenue by which a defendant may seek to establish his innocence by excluding
himself as the perpetrator of the offense.  See Blacklock v. State, 235
S.W.3d 231, 232-33 (Tex. Crim. App. 2007).  Birdwell asserted self-defense against
the “third person” in Irene’s house, and the jury was charged on but rejected
that theory in finding Birdwell guilty.  The contested issue in his trial was
not who stabbed and killed Irene, but why Birdwell stabbed her. 
Birdwell judicially admitted that he stabbed her.  Identity was not and is not
an issue, and the trial court did not err in so finding.  See Lyon v.
State, --- S.W.3d ---, --- & n.1, 2008 WL 4587242, at *2 & n.1 (Tex.
App.—San Antonio Oct. 15, 2008, no pet. h.) (identity was not at issue
where defendant had admitted he stabbed his wife in self-defense, and
postconviction DNA testing is not for establishing a defense); Reger v. State, 222 S.W.3d 510, 514 (Tex. App.—Fort
Worth 2007, pet. ref’d) (perpetrator’s identity not at issue where defendant
admitted to shooting victim in self-defense); In re
State ex rel. Villalobos, 218 S.W.3d 837, 840-41 (Tex. App.—Corpus Christi 2007,
orig. proceeding) (identity was not at issue where defendant convicted of
murder sought DNA testing to prove self-defense); Roughly
v. State, 2003 WL 22450442, at *1 (Tex. App.—Dallas Oct. 29, 2003, pet.
ref’d) (not designated for publication) (perpetrator’s identity not at issue
where defendant admitted to stabbing victim and throwing him off balcony in
self-defense).  We
overrule Birdwell’s third issue to the extent it asserts identity is or was at
issue.

Birdwell’s third issue also complains that
the trial court erred in denying his motion because he established by a
preponderance of the evidence that a reasonable probability exists that he
would not have been convicted if exculpatory results had been obtained through
DNA testing.  But because identity was not and is not at issue in this case,
and because Birdwell could be entitled to DNA testing only if identity was or is
at issue, we need not address this complaint in his third issue.  See Roughly,
2003 WL 22450442, at *2; Tex. R. App. P.
47.1.  For the same reason, we need not address Birdwell’s first issue, which
complains that the trial court erred in denying his motion because Birdwell
proved evidence with biological material existed.

Birdwell’s second issue asserts that the
trial court erred because the State failed to comply with the statute by
delivering to the court the evidence and a description of its condition or by
explaining why the evidence could not be delivered to the court.  See Act
of April 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 3
(current version at Tex. Code Crim.
Proc. Ann. art. 64.02(a)(2) (Vernon 2008)).  But again, because identity
was not and is not at issue in this case, we need not address Birdwell’s second
issue.  See Roughly, 2003 WL 22450442, at *2; Tex. R. App. P. 47.1.

We affirm the trial court’s order
denying Birdwell’s postconviction motion for forensic DNA testing.

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed December 17, 2008

Publish

[CRPM]